## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | Case No.  CIV-16-32-M |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF** |
| v. | |
| KEVIN J. DAVIS, | Jury Trial Demanded |
| Defendant. | |

Plaintiff U.S. Commodity Futures Trading Commission (the "Commission"), by and through its attorneys, alleges as follows:

## I.    SUMMARY

1.      Beginning no later than February 2012, and continuing through the present, Defendant Kevin J. Davis ("Davis") has solicited, accepted, and received approximately $2.7 million from at least twenty individuals, pooled the funds in a personal bank account, and then used the funds to trade off-exchange foreign currency contracts ("forex").  Davis has also issued nearly $600,000 in payments to some or all of those pool participants.  Davis is thus acting as a commodity pool operator ("CPO") without having registered as required with the Commission.  Davis also engaged in prohibited activities by failing to operate as a separate legal entity, accepting funds in his own name, and commingling participant funds with his own.

2.      By virtue of this conduct and the further conduct described herein, Davis has engaged, is engaging, or is about to engage in acts and practices that violate the

Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and Commission

Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2014).

3.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012),

the Commission brings this action to enjoin Davis' unlawful acts and practices and to

compel his compliance with the Act and Regulations.  The Commission also seeks civil

monetary penalties for each violation of the Act and Regulations, as well as remedial

ancillary relief, including, but not limited to, trading and registration bans, restitution,

disgorgement, rescission, pre- and post-judgment interest, and such other relief as the

Court may deem necessary and appropriate.

4.      Unless restrained and enjoined by this Court, Davis is likely to continue

engaging in the acts and practices alleged in this Complaint or similar acts and practices,

as described more fully below.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to Section 6c of the

Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the

Commission that any person has engaged, is engaging, or is about to engage in an act or

practice constituting a violation of any provision of the Act or any rule, regulation, or

order thereunder, the Commission may bring an action in the proper district court of the

United States to enjoin such act or practice or to enforce compliance.

6.      The Commission possesses jurisdiction over the conduct and forex

transactions at issue in this case pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C.

§ 2(c)(2)(C) (2012).

7.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Davis resides and transacts business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

### III.    THE PARTIES

8.      Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq*. (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq*. (2014).

9.      Defendant **Kevin J. Davis** resides in Ponca City, Oklahoma.  He has never been registered with the Commission in any capacity.

### IV.    RELEVANT STATUTES AND REGULATIONS

10.     Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), defines a CPO, in relevant part, as any person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property . . . for the purpose of trading in commodity interests, including any . . . agreement, contract, or transaction described in section 2(c)(2)(C)(i)[.]"

11.     Section 2(c)(2)(C)(i) and (vii) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) and (vii) (2012), provides in pertinent part, and subject to certain exceptions not relevant here, that the Commission has jurisdiction over forex transactions if the transactions are offered to or entered into with a person that is not an eligible contract participant ("ECP") on a

3

leveraged or margined basis, and the transactions do not result in actual delivery within two days or otherwise create an enforceable obligation to deliver in connection with the parties' line of business.

12.     Section 1a(18)(xi) of the Act, 7 U.S.C. § 1a(18)(xi) (2012), defines an ECP, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10,000,000, or $5,000,000 if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.

13.     Pursuant to Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012), and subject to certain exceptions not relevant here, a person must be registered pursuant to a Commission rule or regulation in order to operate or solicit funds for any pooled investment in connection with forex transactions.

14.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), makes it unlawful for any CPO, unless registered, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as a CPO.

15.     Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2014), provides that any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an ECP, as defined in Section 1a(18) of the Act, and that engages in retail forex transactions is a CPO.  Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014), requires that such persons be registered as CPOs.

16.     Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1) (2014), provides that, with certain exceptions not relevant here, a CPO must operate the pool as an entity cognizable

as a legal entity separate from that of the pool operator.  Regulation 4.20(b), 17 C.F.R.

§ 4.20(b) (2014), provides that a CPO must receive funds from existing or prospective

pool participants in the pool's name.  Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2014),

prohibits a CPO from commingling pool property with the property of any other person.

## V.   FACTS

17.    Beginning no later than February 2012, and continuing through the present

(the "relevant period"), Davis has solicited, accepted, and received approximately $2.7

million from at least twenty members of the general public ("pool participants" or

"participants") for the purpose of forex trading.

18.    Davis received participants' funds by wire transfer or by check, and he

pooled the funds in an account ending in 3559 (the "'3559 Account") at a bank in Ponca

City, Oklahoma.  The '3559 Account was a joint checking account held in the names of

Davis, his mother, and his son.  At all relevant times, Davis remained the primary

accountholder.

19.    Over the course of the relevant period, Davis opened or maintained at least

seventeen separate forex trading accounts in his own name at four different registered

forex dealers in which he actively traded (collectively, the "forex trading accounts").

20.    During the relevant period, Davis wired at least $2.7 million from the '3559

Account to the forex trading accounts.  In that same time frame, Davis lost more than

$1.2 million trading forex in the forex trading accounts.

21.    Over the course of the relevant period, Davis also withdrew more than

$450,000 from the forex trading accounts and wired the funds to the '3559 Account.

Davis used those funds, as well as money from other sources, to make payments to pool participants.  In total, Davis has issued nearly $600,000 in payments to pool participants during the relevant period.

22.     On information and belief, Davis closed the '3559 Account in November 2015, and now holds pool participants' funds in other bank accounts under his control.

23.     The forex transactions conducted by Davis were entered into on a leveraged or margined basis, and they neither resulted in delivery of actual currency within two days nor created an enforceable obligation to deliver or accept delivery.  Rather, the forex contracts remained open day to day and were offset without any making or taking delivery of actual currency or facing an obligation to do so.

24.     Upon information and belief, neither Davis nor any of the pool participants qualify as ECPs as that term is defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012).

25.     Upon information and belief, the forex pool operated by Davis is not an ECP as that term is defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012).

26.     Davis is not, and never has been, exempt or excluded from registration with the Commission as a CPO.  Even if Davis were eligible for exemption or exclusion from registration, he has never filed the required notice for an exemption or exclusion.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE

**Acting as an Unregistered Commodity Pool Operator**
**7 U.S.C. § 6m(1) and 17 C.F.R. § 5.3(a)(2)(i)**

27.     Paragraphs 1 through 26 are re-alleged and incorporated herein.

28.     During the relevant period, Davis engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received funds from others for the purpose of trading in commodity interests, namely forex.  Davis has therefore acted as a CPO as defined by Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012).

29.     During the relevant period, Davis, while unregistered with the Commission, wired funds between the '3559 Account in Oklahoma and forex trading accounts in California, New York, and New Jersey.  In doing so, Davis made use of the mails or other means or instrumentalities of interstate commerce in connection with his business as a CPO in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

30.     Each use of the mails or other means or instrumentalities of interstate commerce by Davis, while acting as an unregistered CPO, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

31.     During the relevant period, Davis operated and/or solicited funds for a pooled investment vehicle that is not an ECP, and that engaged in retail forex transactions.  Davis therefore also acted as a CPO with respect to forex transactions as defined by Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2015).  Because Davis was not registered as a CPO with the Commission, he also violated Regulation 5.3(a)2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014).

## COUNT TWO

### Failure to Operate Commodity Pool as a Separate Entity; Failure to Receive Pool Participant Funds in Pool's Name; and Commingling Pool Funds
### 17 C.F.R. § 4.20(a)-(c)

32.     Paragraphs 1 through 31 are re-alleged and incorporated herein.

33.     Regulation 5.4, 17 C.F.R. § 5.4 (2015), provides that the Commission's Regulations under Part 4 apply to any person required pursuant to the provisions of Part 5 to register as a CPO.

34.     Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1) (2014), requires that a CPO operate the pool as a legal entity separate from that of the pool operator.

35.     Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2014), requires that a CPO receive funds from existing or prospective pool participants in the pool's name.

36.     Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2014), prohibits a CPO from commingling pool property with the property of any other person.

37.     Throughout the relevant period, Davis, while acting as an unregistered CPO, failed to operate his commodity pool as a legal entity separate from himself.  Davis instead received and traded pool participant funds in his own name.  He further pooled participant funds in a joint checking account he held with family members, where the funds were commingled with property unrelated to the commodity pool.  In doing so, Davis violated Regulations 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2014).

38.     Each instance by Davis of receiving funds in other than the name of the pool, and of commingling participant funds with the funds of others, is alleged as a separate and distinct violation of Regulations 4.20(b),(c), 17 C.F.R. § 4.20(b)-(c) (2014).

## VII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2014), and pursuant to its own equitable powers, enter:

A.      An order finding Davis liable for violating Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), and Regulations 4.20(a)-(c) and 5.3(a)2)(i), 17 C.F.R. §§ 4.20(a)-(c), 5.3(a)(2)((i) (2014).

B.      A temporary restraining order with notice to Davis and an order of preliminary injunction enjoining him and any other person or entity in active concert with him, from directly or indirectly:

1.   Destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, any books and records, correspondence, electronically stored data, or other documents relating to Davis' forex trading or commodity pool operation;

2.   Withdrawing, transferring, selling, alienating, liquidating, encumbering, pledging, loaning, assigning, concealing, dissipating, converting, or otherwise disposing of any assets, wherever located, including, but not limited to, funds on deposit in any financial institution account held by or in Davis' name, whether jointly or otherwise;

3.   Impeding authorized representatives of the Commission from inspecting, when and as requested, any books and records,

correspondence, electronically stored data, or other documents relating

to Davis' forex trading or commodity pool operation.

C.     An order of permanent injunction restraining, enjoining, and prohibiting

Davis, and any other person or entity in active concert with him, from engaging in

conduct in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), and

Regulations 4.20(a)-(c) and 5.3(a)2)(i), 17 C.F.R. §§ 4.20(a)-(c), 5.3(a)(2)((i) (2014).

D.     An order of permanent injunction prohibiting Davis and any other person or

entity in active concert with him from, directly or indirectly:

     i.    Trading on or subject to the rules of any registered entity (as that term is

          defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

     ii.   Entering into any transactions involving "commodity interests" (as that

          term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for

          accounts in Davis' name or for accounts in which Davis has a direct or

          indirect interest;

     iii.  Having any commodity interests traded on Davis' behalf;

     iv.  Controlling or directing the trading for or on behalf of any other person

          or entity, whether by power of attorney or otherwise, in any account

          involving commodity interests;

     v.    Soliciting, receiving, or accepting any funds from any person for the

          purpose of trading in commodity interests;

     vi.  Applying for registration or claiming exemption from registration with

          the Commission in any capacity, and engaging in any activity requiring

such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and

vii.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

E.    An order requiring Davis, as well as any successor, to disgorge to any officer appointed by the Court all benefits received from acts or practices constituting violations of the Act and Regulations as described herein, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, plus pre-judgment interest thereon from the date of such violations, and post-judgment interest;

F.    An order requiring Davis, as well as any successor, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity who sustained losses proximately caused by Davis' violations (in the amount of such losses), plus pre-judgment interest thereon from the date of such violations, and post-judgment interest;

G.    An order directing Davis, as well as any successor, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into with any of the individuals whose funds were received as a result of

the acts and practices constituting violations of the Act and Regulations, as described herein;

     H.     An order requiring Davis to pay a civil monetary penalty under the Act, to be assessed by the Court, in the amount of not more than the greater of (1) triple the monetary gain for each violation of the Act and Regulations or (2) $140,000 for each violation of the Act and Regulations;

     I.     An order requiring Davis to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

     J.     An order granting such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Date: January 15, 2016          Respectfully submitted,

<div style="margin-left:3em">

/s/ Daniel R. Burstein
_____
Daniel R. Burstein, IL Bar #6292485
Joseph A. Konizeski, DC Bar #473275
Scott Williamson, IL Bar #6191293
Rosemary Hollinger, IL Bar #3123647
U.S. COMMODITY FUTURES TRADING COMMISSION
525 W. Monroe Street, Suite 1100
Chicago, IL 60661
dburstein@cftc.gov
jkonizeski@cftc.gov
swilliamson@cftc.gov
rhollinger@cftc.gov
(312) 596-0697 (Burstein)
(312) 596-0546 (Konizeski)
(312) 596-0560 (Williamson)
(312) 596-0520 (Hollinger)
(312) 596-0714 (facsimile)

</div>